Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7061 | **DATE** | 9/13/2000 |
| **CASE TITLE** | Commodity Futures Trading Commissio vs. FTI Financial Group., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter consent of permanent injunction and other equitable relief against Terry G. Wigdon.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 1 4 2000 | date docketed | 60 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | 60-7 FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 00 SEP 13 PM 1: 07 | date mailed notice | |
| WAP | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COMMODITY FUTURES TRADING COMMISSION,     )
    )
                             Plaintiff,     )     Civil Action No.
    )
                                v.     )     97 C 7061
    )
FTI FINANCIAL GROUP, et al.,     )     Judge:
    )     Harry D. Leinenweber
                        Defendants.     )

## CONSENT ORDER OF PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF
## AGAINST TERRY G. WIGTON

### I.

1.     On October 9, 1997, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint against certain defendants seeking preliminary and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 et seq. (1994). On January 28, 1998, the Commission filed an Amended Complaint, naming four additional defendants, including Terry G. Wigton ("Wigton").

2.     To effect settlement of the matters alleged in the Amended Complaint against Wigton without a trial on the merits, Wigton consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief Against Terry G. Wigton ("Consent Order"). Wigton also: (1) acknowledges service of the Summons and Amended Complaint; (2) admits both personal and subject matter jurisdiction of this Court in this action; (3) admits that venue properly lies with this Court; and (4) generally waives the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Parts II and III below.

DOCKETED

SEP 1 4 2000

3.     By consenting to the entry of this Consent Order, Wigton admits the allegations of the Amended Complaint and the Findings of Fact and Conclusions of Law contained in this Consent Order. Wigton further agrees and the parties to this Consent Order intend that all Findings of Fact made by the Court in this Consent Order shall be taken as true and correct and be given preclusive effect without further proof in any bankruptcy proceeding filed by, on behalf of or against Wigton for the purpose of determining whether the restitution and/or other payments ordered against him are excepted from discharge.  Wigton shall also provide immediate notice of any bankruptcy proceeding filed by, on behalf of or against him in the manner required by Section VI, paragraph 1 of this Consent Order.

4.     Wigton waives:  (1) all claims that he may possess under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub. L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations, 17 C.F.R. §§ 148.1, et seq. (1999), relating to or arising from this action and any right under EAJA to seek costs, fees and other expenses relating to or arising from,this proceeding; (2) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights of appeal from this Consent Order.

5.     Wigton also consents to the continued jurisdiction of the Court for the purpose of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this case.

6.      Wigton agrees to cooperate fully with the Commission in its prosecution of the Amended Complaint in this proceeding, in any ongoing investigations related to the subject matter of the Amended Complaint, and in all other proceedings arising from such investigations by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of documents; (3) testifying completely and truthfully; and (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony Wigton is asked to provide.

7.      Wigton further affirms that he has read this Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce him to consent to this Consent Order, other than as set forth specifically herein.

8.      Wigton acknowledges that, based upon the sworn representations contained in his Financial Disclosure Statements dated August 24, 1998 and February 22, 2000, and other evidence provided by Wigton regarding his financial condition, the Court is not ordering immediate payment of restitution, disgorgement or a civil monetary penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of restitution, disgorgement or a civil monetary penalty is contingent upon the accuracy and completeness of the Financial Disclosure Statements and other evidence provided by Wigton regarding his financial condition. If at any time following the entry of this Consent Order, the Commission

obtains information indicating that Wigton's representations to the Commission concerning his

financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect

as of the time such representations were made, the Commission may, in its sole discretion and

without prior notice to Wigton, petition this Court for an order requiring Wigton immediately to

pay restitution, disgorgement and/or a civil monetary penalty. In connection with any such

petition, the only issues shall be whether the financial information provided by Wigton was

fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such

representations were made, and the additional amount to be imposed. In its petition, the

Commission may request that this Court consider all available remedies, including, but not

limited to, ordering Wigton to pay funds or transfer assets, directing the forfeiture of any assets,

imposing sanctions for contempt of this Consent Order and/or the Commission may also request

additional discovery. Wigton may not, by way of defense to such petition, challenge the validity

of his consent to this Consent Order, contest the allegations in the Amended Complaint filed by

the Commission or the Findings or Fact or Conclusions of Law contained in this Consent Order,

contest the amount of restitution, disgorgement and/or interest, or assert that the payment of

restitution, disgorgement and/or a civil penalty should not be ordered.

9.     The Court, being fully advised in the premises finds that there is good cause for

the entry of this Consent Order and that there is no just reason for delay. The Court therefore

directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary

equitable relief, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994), as set forth herein.

4

## II.

### FINDINGS OF FACT

The Court hereby makes the following findings of fact:

1.    This Court has subject matter jurisdiction over this action and the allegations in the Amended Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994).

2.    This Court has personal jurisdiction over Wigton and Wigton has acknowledged service of the Summons and Amended Complaint and consented to the Court's jurisdiction over him.

3.    The Commission and Wigton have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

### THE PARTIES

4.    Plaintiff Commission is an independent federal regulatory agency charged with the responsibility of administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (1994), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (1999).

5.    Wigton resides at 656 Eleanora Drive, Cuyahoga Falls, Ohio 44223.  He has never been registered with the Commission in any capacity.

### WIGTON'S AND TRADER A'S MULTI-LEVEL MARKETING OPERATION

6.    Beginning in about November 1995, Wigton and an individual who was engaged in trading commodity futures ("Trader A") devised a business plan incorporating multi-level marketing techniques to solicit general partners and investors to form commodity pools.  Under

5

the multi-level marketing plan:

    a.    Trader A would act as the trading advisor for the commodity pools formed in exchange for an advisory fee equal to 30% of the realized profits from the commodity interest trading;

    b.    an individual would act as general partner and/or commodity pool operator ("CPO") of a pool in exchange for a percentage (usually 15%) of the realized profits from commodity interest trading conducted for that pool; individuals (whether acting as a general partner or merely an investor) could also receive a percentage of realized profits (ranging from 1% to 3%) of a pool's commodity interest trading if they were responsible for locating an individual willing to serve as a general partner and/or CPO for a new pool; and

    c.    the balance of the realized profits would be paid or credited to the investors.

7.    Trader A offered to trade the commodity pools that he advised pursuant to a commodity trading system called Profit 22.

8.    At various times between at least December 1995 and at least October 1996, Wigton, using the multi-level marketing plan, solicited general partners to form commodity pools.

9.    Wigton ultimately received $2,507.00 in advisory fees under the multi-level compensation plan.

## WIGTON SOLICITED COMMODITY POOLS AND INVESTORS FOR POOLS

10.    At various times in 1996, Wigton solicited others to form commodity pools and solicited investors for those commodity pools individually and at seminars held in Tennessee and Virginia. The commodity pools, formed as a result of the solicitations by Wigton, were set up as limited partnerships which raised funds from investors through the sale of limited partnership

6

interests. These commodity pools (collectively, the "Wigton pools") included:

a.   Tennessee One Partners, L.P. ("Tennessee One"), a Tennessee limited partnership;

b.   Tennessee Two, L.P. ("Tennessee Two"), a Tennessee limited partnership;

c.   Volunteer Investors, L.P. ("Volunteer"), a Tennessee limited partnership;

d.   TN/VA Team One, L.P. ("TN/VA"), a Virginia limited partnership;

e.   Virginia One, L.P. ("Virginia One"), a Virginia limited partnership; and

f.   Global Financial Strategies, L.P. ("Global"), an Ohio limited partnership.

11.   Wigton solicited at least $613,792.00 from at least 109 investors in Tennessee One, Tennessee Two, Volunteer, TN/VA and Virginia One. Wigton solicited these investors by participating in seminars and by soliciting the general partners of these pools who, in reliance on Wigton's representations made in those solicitations, repeated the representations to investors. In addition, Wigton solicited at least $25,100.00 from five investors in Global. (Collectively, investors in the Wigton Pools are referred to as the "Wigton Pool Investors.") Altogether, Wigton solicited a total of $638,892.00 from the Wigton Pool Investors.

12.   Trader A provided commodity trading advice to the Wigton pools in exchange for his advisory fee of 30% of the realized profits from his trading.

13.   The general partners of each of the Wigton pools opened a commodity trading account at a futures commission merchant ("FCM"), and granted Trader A power of attorney to direct the trading. Trader A directed trading in each pool until on or about October 4, 1996.

7

14.     From about December 1995 to October 1996, Wigton acted as an associated person of a CPO and as an associated person of a commodity trading advisor ("CTA") without being registered with the Commission.

<u>WIGTON'S FRAUDULENT CONDUCT</u>

15.     In December 1995 or early January 1996, Wigton solicited an individual to invest in the Global commodity pool. Wigton represented the material fact that Global was an established commodity pool, advised by Trader A, and was making substantial returns by trading according to the Profit 22 system. At the time Wigton made these representations, he knew that the Global commodity pool did not yet exist.

16.     In January 1996, based upon Wigton's representations, the individual Wigton solicited and three of his friends (the "four investors") gave Wigton $6,651.00 to invest in Global.

17.     Between January 1996 and March 7, 1996, Wigton reported to one of the investors that profits were being made through futures trading in a Global trading account. In fact, Wigton did not use the four investors' money for futures trading until March 7, 1996.

18.     On March 7, 1996, Wigton opened a commodity interest trading account with the four investors' money in the name of Global at Vision Limited Partnership, a registered futures commission merchant. From March 7, 1996 to April 18, 1996, Wigton reported fictitious trading results in that account to one of the four investors.

19.     On or before April 18, 1996, one of the four investors asked Wigton to withdraw the investors' funds from Global. Wigton withdrew $12,373.00, the purported value of the

investors' funds and paid it to that investor. In fact, the $12,373.00 Wigton withdrew were funds attributable to other investors.

20.     From at least December 1995 to at least October 1996, Wigton willfully misrepresented material facts to general partners and Wigton Pool Investors concerning the risk of trading commodity interests and the profitability and past performance of commodity interest trading accounts advised by Trader A. Wigton's material misrepresentations included among other things:

  a.  that Trader A had developed a highly successful commodity futures trading system called Profit 22;

  b.  that Trader A traded the commodity pools he advised according to the Profit 22 system and had made substantial profits every month;

  c.  that investors could expect a minimum return of 31% per year;

  d.  that Trader A had made average annual returns of 200% to 300% trading the Profit 22 system he developed;

  e.  that Trader A had made 1200% in his best year trading the Profit 22 system he developed;

  f.  that the investors' principal was virtually guaranteed; and

  g.  that the Profit 22 system minimized the risks of commodity trading, because it signaled the purchase and sale of commodity interest contracts in 22 markets every day.

Wigton intended that the general partners of the commodity pools would repeat these misrepresentations to investors.

21.     From at least December 1995 to at least October 1996, Wigton misrepresented material facts relating to Trader A's fee structure to general partners and Wigton Pool Investors

in that he told the general partners and investors that no advisory fees would be charged to the pools if the pools had realized losses, but failed to disclose that Trader A's fee structure allowed Trader A to receive advisory fees while unrealized losses on open positions accumulated in their accounts.

22.     From January 1996 to September 1996, Wigton operated a free telephone hotline number which reported trading results purportedly made from the Profit 22 trading system. At various times from at least December 1995 to at least October 1996, Wigton reported false trading results to general partners and investors daily on the hotline and by facsimile.

23.     The acts and omissions described in these Findings of Fact were effected by use of the mails and other means or instrumentalities of interstate commerce, directly or indirectly.

24.     Wigton committed the conduct, as set forth above, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof.

25.     Wigton made each and every fraudulent misrepresentation and omission either knowingly or with reckless disregarded for the truth and Wigton willfully made each and every false report or statement.

10

26.     With respect to each and every Finding of Fact, the Wigton Pool Investors

reasonably, justifiably and detrimentally relied on Wigton's acts, omissions, false reports and

false statements.

## III.

## CONCLUSIONS OF LAW

Pursuant to the Findings of Fact, the Court makes the following Conclusions of Law:

1.      From at least December 1995 to October 1996, Wigton violated Section 4b(a)(i) of

the Act, 7 U.S.C. § 6b(a)(i), in that he willfully cheated or defrauded or attempted to cheat or

defraud other persons by making material misstatements of fact concerning the risk of trading

commodity interests and the profitability and past performance of commodity interest trading

accounts advised by Trader A.  Wigton's acts and omissions were made in or in connection with

orders to make, or the making of, contracts for future delivery, made, or to be made, for or on

behalf of other persons where such contracts for future delivery were or may have been used for (a)

hedging any transaction in interstate commerce in such commodity, or the products or by products

thereof, or (b) determining the price basis of any transaction in interstate commerce in such

commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce

for the fulfillment thereof.

2.      From at least December 1995 to at least October 1996, Wigton violated

Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii), in that he willfully made or caused to be made to

other persons false reports or statements, by providing statements to general partners and investors

which falsely represented that profits had been made and overstated the true value of each

11

investor's interest in commodity futures contracts. These false reports or statements were made in or in connection with orders to make, or the making of, contracts for future delivery, made, or to be made for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or by products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

3.      From at least December 1995 to at least October 1996, Wigton violated Section 4k(2) of the Act, 7 U.S.C. § 6k(2), in that he solicited funds for participation in commodity pools without being registered, as required, with the Commission as an associated person of a CPO.

4.      From at least December 1995 to at least October 1996, Wigton violated Section 4k(3) of the Act, 7 U.S.C. § 6k(2), in that while he was associated with a CTA, he solicited clients' or prospective clients' discretionary accounts without being registered, as required, with the Commission as an associated person of a CTA.

5.      From at least December 1995 to October 1996, Wigton violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1), in that he employed a device, scheme, or artifice to defraud clients or participants or prospective clients or participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon clients or participants or prospective clients or participants while acting as an associated person of a CPO and/or an associated person of a CTA. These acts and omissions were effected by use of the mails and other means or instrumentality of interstate commerce.

# IV.

## **ORDER FOR PERMANENT INJUNCTION**

NOW THEREFORE, IT IS ORDERED THAT:

1.      Wigton is permanently restrained, enjoined and prohibited from directly or

indirectly:

a.      cheating or defrauding or attempting to cheat or defraud other persons, in
or in connection with any order to make, or the making of, any contract of
sale of any commodity for future delivery, made, or to be made, for or on
behalf of any other person if such contract for future delivery is or may be
used for (a) hedging any transaction in interstate commerce in such
commodity or the products or byproducts thereof, or (b) determining the
price basis of any transaction in interstate commerce in such commodity,
or (c) delivering any such commodity sold, shipped, or received in
interstate commerce for the fulfillment thereof, in violation of Section
4b(a)(i) of the Act, 7 U.S.C. § 6b(a)(i);

b.      willfully making or causing to be made to such other person any false
report or statement thereof, in violation of Section 4b(a)(ii) of the Act, 7
U.S.C. § 6b(a)(ii);

c.      acting as an associated person of a CPO without being registered under the
Act, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2);

d.      acting as an associated person of a CTA without being registered under the
Act, in violation of Section 4k(3) of the Act, 7 U.S.C. § 6k(3); and/or

e.      employing any device, scheme, or artifice to defraud any client or
participant or prospective client or participant, or engaging in any
transaction, practice, or course of business which operates as a fraud or
deceit upon any participant or prospective participant while acting as an
associated person or a CPO or an associated person of a CTA, by use of
the mails or any means or instrumentality of interstate commerce, in
violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

2.      Wigton is further permanently restrained, enjoined and prohibited from directly or

indirectly:

13

a.    engaging in, controlling or directing the trading for any commodity interest transactions account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

b.    entering into any commodity futures or options transaction for his own account, for any account in which he has a direct or indirect interest and/or having any commodity interests traded on his behalf; and

c.    seeking registration or claiming exemption from registration with the Commission in any capacity under the Act and engaging in any activity requiring such registration or exemption from registration, or acting as an agent or officer of any person registered, exempted from registration or required to be registered with the Commission. This includes, but is not limited to soliciting, accepting or receiving any funds, revenue or other property from any person, or giving advice for compensation, or soliciting prospective customers in connection with the purchase or sale of any commodity futures or options on commodity futures contracts ("commodity interests").

3.    The injunctive provisions of this Consent Order shall be binding upon Wigton, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Wigton, and upon any person who receives actual notice of this Consent Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Wigton.

## V.

## <u>ORDER FOR OTHER EQUITABLE RELIEF</u>

IT IS FURTHER ORDERED THAT:

1.    <u>Restitution and Disgorgement</u>: Wigton is ordered to pay restitution in the amount of $535,251.61, which includes disgorgement in the amount of $2,507.00 ("Disgorgement Amount"). Wigton is also ordered to pay pre-judgment interest in the amount of $168,503.84, for total restitution in the amount of $703,755.45 (" Total Restitution Amount") to be paid for the

14

purpose of compensating persons whose funds were solicited, received or disposed of by Wigton

in violation of the statutory and other provisions identified in this Consent Order. Of this sum,

Wigton is ordered to make immediate payment of twenty-two thousand four hundred dollars

($22,400) ("Partial Restitution Amount"). Based upon the sworn representations of Wigton

contained in his Financial Disclosure Statements dated August 24, 1998 and February 22, 2000,

and other evidence provided by Wigton regarding his financial condition, the Court is not

ordering Wigton to make immediate payment of the Total Restitution Amount. Rather, the

Wigton Pool Investors may seek payment of the Total Restitution Amount as set forth in this

Section V, paragraph 2.b.

In addition, Wigton shall pay post-judgment interest on the Total Restitution Amount

from the date of this Consent Order until the Restitution Amount is paid in full. Post-judgment

interest shall be paid at the Treasury Bill rate prevailing on the date of this Consent Order,

pursuant to 28 U.S.C. § 1961(a).

Exhibit A, attached hereto and incorporated by reference, is a listing of Wigton Pool

Investors. Exhibit A includes, *inter alia*, the Commission's calculation of the total amount of

restitution owed to each investor, i.e., the Total Restitution Amount. The parties hereto

acknowledge that the Exhibit A listing may be incomplete for various reasons including, without

limitation, because records are missing or have been destroyed. Omission from Exhibit A shall

in no way limit the ability of any Wigton Pool Investor from seeking recovery from Wigton or

any other person or entity. Further, the amounts contained in Exhibit A shall not limit the ability

of any Wigton Pool Investor from proving that a greater amount is owed from Wigton or any

15

other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Wigton Pool Investor that exist under state or common law. The Commission is free to amend Exhibit A at any time to add additional or newly discovered investors and to change the amounts of pro rata distribution. Restitution shall be paid in accordance with the provisions of paragraph 2 below.

2.    <u>Payment of Restitution</u>: Restitution shall be made as follows:

    a.    Payment of the Partial Restitution Amount shall be made within 10 calendar days after entry of this Consent Order. Payment shall be directed to The National Futures Association ("NFA") which is hereby designated as the Monitor for purposes of distributing the Partial Restitution Amount. Notice to the Monitor shall be made to Mr. Daniel A. Driscoll, Executive Vice President and Chief Compliance Officer, or his successor, at the following address:

Executive Vice President, Compliance
National Futures Association
200 West Madison Street
Chicago, IL 60606

Upon entry by the Court of this Consent Order, the Monitor will establish an account ("Designated Settlement Fund") to accept the Partial Restitution Amount from Wigton. Within 30 calendar days, based on the funds deposited in the Designated Settlement Fund, the Monitor, in consultation with the Commission, shall distribute or cause to be distributed, checks to the persons listed in Exhibit A in an amount equal to each person's pro rata share of the Designated Settlement Fund. If after one year from the date of deposit into the Designated Settlement Fund, any portion of the funds cannot be distributed or is unclaimed, the Monitor shall make a recommendation to the Commission providing for distribution of the funds to any other Wigton Pool Investor or make a recommendation to the Commission that the funds shall become a civil monetary payment pursuant to Section 6(c) of the Act. Any funds that become a civil monetary payment shall be paid to the Commodity Futures Trading Commission for deposit to the United States Treasury, and addressed to Dennese Posey, or her successor, Division of Trading and Markets, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington D.C. 20581 under cover of a letter that identifies Terry

16

G. Wigton and the name and docket number of this proceeding. A copy of the cover letter and the form of payment shall be simultaneously transmitted to Phyllis J. Cela, Acting Director, Division of Enforcement, Commodity Futures Trading Commission, or her successor, at the following address: 1155 21st Street, N.W., Washington, D.C. 20581.

b.     Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each Wigton Pool Investor is explicitly made an intended third-party beneficiary of this Consent Order, such that every Wigton Pool Investor may seek: to obtain satisfaction of the greater of his/her portion of the Total Restitution Amount as reflected on Exhibit A that has not been paid from any source, or an amount greater than that shown on Exhibit A that the Wigton Pool Investor can prove is due and owing; to ensure continued compliance with any provision of this Consent Order; and to hold Wigton in default and/or contempt for any past violations of any provision of this Consent Order.

c.     Neither Wigton nor any member of his immediate family is entitled to restitution in any amount for any funds invested in any Wigton Pool.

4.     Default: Any failure by Wigton to carry out any of the terms, conditions or obligations under any paragraph of this Consent Order shall constitute an Event of Default under this Consent Order. If any Event of Default occurs and, if capable of being cured, is not cured within ten (10) calendar days following the Commission's (or its designee) mailing of notice of such Event of Default to Wigton, the Commission (or its designee) and/or any Wigton Pool Investor shall be entitled to:

a.     an order granting immediate payment of restitution in the amount of $535,251.61 plus pre-judgment interest of $168,503.84, less any payments made;

b.     petition the Court to consider all available remedies including, but not limited to, imposing sanctions for contempt of this Consent Order;

c.     enforce and take all legal steps necessary to satisfy the Permanent Injunction and otherwise declare the terms and conditions contained in this Consent Order null, void and without legal force;

d.        pursue Wigton for any and all additional claims and causes of action of any nature, in law or in equity, which the Commission or any Wigton Pool Investor have, may have or may have had against Wigton; and/or

e.        use any statement heretofore or hereafter made by Wigton as evidence against him.

Wigton expressly agrees and this Court orders that upon the occurrence of an Event of Default, Wigton will be barred: (1) from asserting any defense, including expiration of any statute of limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission or any Wigton Pool Investor to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Wigton's agreement to this Consent Order or while this Consent Order remains in effect; and/or (2) from objecting to, defending against or otherwise disputing the non-dischargeability of his obligations, including his obligations under this Consent Order.

5.     <u>Reliance on Financial Disclosure</u>:  Based upon the sworn representations of Wigton contained in his Financial Disclosure Statements dated August 24, 1998 and February 22, 2000, and other evidence provided by Wigton regarding his financial condition, the Court is not ordering immediate payment of the Total Restitution Amount beyond the Partial Restitution Amount ordered to be paid pursuant to Section V, paragraph 1, the Disgorgement Amount or a civil monetary penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8.  The determination not to order immediate payment of the Total Restitution Amount, the Disgorgement Amount and/or a civil monetary penalty is contingent upon the accuracy and completeness of the Financial Disclosure Statements and other evidence provided by Wigton regarding his financial condition.  If at any time

following the entry of this Consent Order, the Commission obtains information indicating that

Wigton's representations to the Commission concerning his financial condition were fraudulent,

misleading, inaccurate or incomplete in any material respect as of the time such representations

were made, the Commission may, in its sole discretion and without prior notice to Wigton,

petition this Court for an order requiring Wigton immediately to pay the Total Restitution

Amount, the Disgorgement Amount and/or a civil monetary penalty. In connection with any

such petition, the only issues shall be whether the financial information provided by Wigton was

fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such

representations were made, and the additional amount to be imposed. In its petition, the

Commission may request that this Court consider all available remedies, including, but not

limited to, ordering Wigton to pay funds or transfer assets, directing the forfeiture of any assets,

imposing sanctions for contempt of this Consent Order and/or the Commission may also request

additional discovery. Wigton may not, by way of defense to such petition, challenge the validity

of his consent to this Consent Order, contest the allegations in the Amended Complaint filed by

the Commission or the Findings or Fact or Conclusions of Law contained in this Consent Order,

contest the Total Restitution Amount, the Disgorgement Amount and/or interest, or assert that

payment of the Total Restitution Amount, the Disgorgement Amount and/or a civil penalty

should not be ordered.

      6.    <u>Transfer of Assets</u>: Wigton shall not transfer or cause others to transfer funds or other

property to the custody, possession, or control of any members of his family or any other person for

the purpose of concealing such funds from the Court, the Commission, the Monitor or any Wigton

Pool Investor until the Total Restitution Amount is paid in full.

## VI.

## MISCELLANEOUS PROVISIONS

1.      Notices:  All notices required to be given by any provision in this Consent Order

shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

> Regional Counsel
> Division of Enforcement - Central Region
> Commodity Futures Trading Commission
> South Riverside Plaza, Suite 1600N
> Chicago, Illinois 60606

Notice to Monitor:

> Executive Vice President,  Compliance
> National Futures Association
> 200 West Madison Street
> Chicago, Illinois 60606

Notice to Defendant:

> Terry G. Wigton
> 656 Eleanora Drive
> Cuyahoga Falls, Ohio 44223

In the event that Wigton changes his residential or business telephone number(s) and/or

address(es) at any time, he shall provide written notice of his new number(s) and/or address(es)

to the Monitor and to the Commission within ten (10) calendar days thereof.

2.      Entire Agreement and Amendments:  This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or

20

modify this Consent Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

3.    Waiver: The failure of any party hereto or of any Wigton Pool Investor at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

4.    Successors and Assigns: This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

5.    Acknowledgements: Upon being served with copies of this Consent Order after entry by this Court, Wigton shall sign acknowledgments of such service and serve such acknowledgments on this Court and the Commission within seven (7) calendar days.

Upon being served with copies of this Consent Order after entry by the Court, the Commission shall serve a copy of the Consent Order upon the Monitor and all persons identified in Exhibit A within seven (7) calendar days.

6.    Invalidation: If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

7.    <u>Jurisdiction of this Court</u>:  This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

DONE AND ORDERED, ADJUDGED AND DECREED this *12th* day of *Sept.* , 2000.

_____
The Honorable Harry D. Leinenweber
United States District Judge

*CONSENTED TO AND APPROVED BY:*

**PLAINTIFF**

_____
Elizabeth E. Durbin
Trial Attorney

_____
Scott R. Williamson
Acting Regional Counsel
COMMODITY FUTURES TRADING COMMISSION
300 S. Riverside Plaza, Suite 1600N
Chicago, Illinois  60606-6615
(312) 886-3090
(312) 353-4502 facsimile

DATED: *Aug. 31, 2000*

**DEFENDANT**

_____
Terry G. Wigton
656 Eleanora Drive
Cuyahoga Falls, Ohio 44223
(330) 929-0365

DATED:_____

22

## Wigton Exhibit A
## Restitution Schedule

| Name of Investors | Amount Owed Investors | | Investor *Pro Rata* Share of $22,400 | | Total Restitution Amount | |
|---|---|---|---|---|---|---|
| ADDINGTON, JAMES | $ | 12,004.91 | $ | 382.11 | $ | 11,622.80 |
| ADDINGTON, JAMES S. JR | $ | 6,574.06 | $ | 209.25 | $ | 6,364.81 |
| ADDINGTON, JANETTE R. | $ | 10,413.31 | $ | 331.45 | $ | 10,081.86 |
| ALLEY, PATTI J. | $ | - | $ | - | $ | - |
| ARMSTRONG, ALAN DALE | $ | 1,314.81 | $ | 41.85 | $ | 1,272.96 |
| BARRETT, ANTHONY ROBERT OR MELISSA | $ | 2,629.62 | $ | 83.70 | $ | 2,545.92 |
| BARRETT, RANDALL | $ | 788.89 | $ | 25.11 | $ | 763.78 |
| BAYS, MICHAEL E. | $ | 22,179.52 | $ | 705.96 | $ | 21,473.56 |
| BELL, H.G. | $ | 50.19 | $ | 1.60 | $ | 48.59 |
| BELLAMY, JERRY | $ | 9,861.09 | $ | 313.87 | $ | 9,547.22 |
| BENNETT, JAMES OR CAROL | $ | 1,314.81 | $ | 41.85 | $ | 1,272.96 |
| BISHOP, DELMAS WAYNE | $ | - | $ | - | $ | - |
| BISTRITAN, PAUL | $ | 2,629.62 | $ | 83.70 | $ | 2,545.92 |
| BROOKS, ANGIE C. | $ | 657.41 | $ | 20.92 | $ | 636.49 |
| CARTER, ALLEN AND DIANE | $ | 5,324.99 | $ | 169.49 | $ | 5,155.50 |
| CARTER, GILES, ALLEN | $ | - | $ | - | $ | - |
| COLEMAN, DENNIS E. | $ | 30,803.24 | $ | 980.44 | $ | 29,822.80 |
| COLLEY, GEOFFREY KEITH AND ANGELA GRUNERT | $ | 2,103.70 | $ | 66.96 | $ | 2,036.74 |
| CONSTANT, STEVE | $ | 203.85 | $ | 6.49 | $ | 197.36 |
| COX, ELMO | $ | 270.85 | $ | 8.62 | $ | 262.23 |
| COX, GLADYS | $ | 657.41 | $ | 20.92 | $ | 636.49 |
| COX, JIMMY BUFORD | $ | 6,574.06 | $ | 209.25 | $ | 6,364.81 |
| COX, WILLIAM CREED OR KAY | $ | 12,830.56 | $ | 408.39 | $ | 12,422.17 |
| CULBERTSON, CHARLES | $ | 262.96 | $ | 8.37 | $ | 254.59 |
| CULBERTSON, CORTNEY N. | $ | 2,958.33 | $ | 94.16 | $ | 2,864.17 |
| CULBERTSON, LINDA | $ | 3,034.02 | $ | 96.57 | $ | 2,937.45 |
| CULBERTSON, LOWELL | $ | 20,609.68 | $ | 655.99 | $ | 19,953.69 |
| CUPP, PHILIP SCOTT | $ | 111.76 | $ | 3.56 | $ | 108.20 |
| DARNELL, GARY | $ | - | $ | - | $ | - |
| DEAN, ROY C. | $ | 657.41 | $ | 20.92 | $ | 636.49 |
| DISHNER, GREG | $ | - | $ | - | $ | - |
| DISHNER, LISA OR TIMOTHY ALLEN | $ | 1,314.81 | $ | 41.85 | $ | 1,272.96 |
| DOVE, VIRGINIA | $ | 26,296.25 | $ | 836.99 | $ | 25,459.26 |
| DYKES, NANCY | $ | 6,574.06 | $ | 209.25 | $ | 6,364.81 |
| FARMER, GLENN | $ | 194.59 | $ | 6.19 | $ | 188.40 |
| FIELDS, JUDY | $ | 4,362.71 | $ | 138.86 | $ | 4,223.85 |
| FIELDS, WAYNE | $ | 17,412.10 | $ | 554.21 | $ | 16,857.89 |
| FIELDS, WILLIAM | $ | 1,959.98 | $ | 62.38 | $ | 1,897.60 |
| FLOWERS, JOAN/OVERBY J. | $ | 407.71 | $ | 12.98 | $ | 394.73 |

## Wigton Exhibit A
## Restitution Schedule

| Name of Investors | Amount Owed Investors | Investor *Pro Rata* Share of $22,400 | Total Restitution Amount |
|---|---|---|---|
| FRAZIER, BETTY OR LLOYD | $ - | $ - | $ - |
| GARST, PAUL | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| GLINSKY, MATT | $ 3,155.55 | $ 100.44 | $ 3,055.11 |
| GOFORTH SR., SAM | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| GOFORTH, BOBBY K. | $ 50,751.76 | $ 1,615.39 | $ 49,136.37 |
| GOFORTH, DUSTIN | $ 197.22 | $ 6.28 | $ 190.94 |
| GOFORTH, HUNTER | $ 65.74 | $ 2.09 | $ 63.65 |
| GOFORTH, KIMBERLY | $ 1,157.03 | $ 36.83 | $ 1,120.20 |
| GOFORTH, KRISTOPHER | $ 65.74 | $ 2.09 | $ 63.65 |
| GOFORTH, WHITNEY | $ 65.74 | $ 2.09 | $ 63.65 |
| GRAY, LARRY | $ 3,944.44 | $ 125.55 | $ 3,818.89 |
| HAGY, MARILYN | $ 394.44 | $ 12.55 | $ 381.89 |
| HAMILTON, JUANITA | $ 1,538.33 | $ 48.96 | $ 1,489.37 |
| HARDING, MARY MARGARET | $ 7,888.87 | $ 251.10 | $ 7,637.77 |
| HARRIS, ROBERT KENT | $ 657.41 | $ 20.92 | $ 636.49 |
| HARRIS, THOMAS | $ 286.37 | $ 9.11 | $ 277.26 |
| HAYES, KEN | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| HELTON, TEDDY | $ 13,148.12 | $ 418.49 | $ 12,729.63 |
| HENRY, THOMAS OR SHIRLEY | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| HORNE, CHARLOTTE | $ - | $ - | $ - |
| HORNE, LONNIE | $ 28,099.78 | $ 894.39 | $ 27,205.39 |
| HOUSEWRIGHT, JOSHUA | $ 26.09 | $ 0.83 | $ 25.26 |
| HOUSEWRIGHT, ROGER OR DEBBIE | $ - | $ - | $ - |
| HUNT, GARY | $ 1,840.74 | $ 58.59 | $ 1,782.15 |
| JARRARD, EVELYN | $ 1,314.81 | $ 41.85 | $ 1,272.96 |
| JENNINGS, BILL | $ 3,944.44 | $ 125.55 | $ 3,818.89 |
| JONES, ESMOND DAVID | $ - | $ - | $ - |
| JONES, HENRY E. | $ - | $ - | $ - |
| JONES, WILLIAM G. | $ 1,314.81 | $ 41.85 | $ 1,272.96 |
| KIKER, KEITH | $ - | $ - | $ - |
| LANE, GARY D. | $ - | $ - | $ - |
| LESLIE, JAMES M. OR DIANE | $ 262.96 | $ 8.37 | $ 254.59 |
| LESLIE, JOHN | $ 32,669.27 | $ 1,039.84 | $ 31,629.43 |
| MACBETH, RICHARD | $ 131.48 | $ 4.18 | $ 127.30 |
| MADDOX, RYAN | $ 1,620.62 | $ 51.58 | $ 1,569.04 |
| MCCRAY, FRED | $ 262.96 | $ 8.37 | $ 254.59 |
| MCENTYRE, BETTY D. OR CLAUDE R. | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| MCFARLAND, RICHARD | $ 50,992.13 | $ 1,623.04 | $ 49,369.09 |
| MITCHELL, JORDY WAYNE | $ 23,373.42 | $ 743.96 | $ 22,629.46 |
| MOORE, KRISTAN | $ 657.41 | $ 20.92 | $ 636.49 |

## Wigton Exhibit A
## Restitution Schedule

| Name of Investors | Amount Owed Investors | Investor *Pro Rata* Share of $22,400 | Total Restitution Amount |
|---|---|---|---|
| MOORE, LEE | $ 657.41 | $ 20.92 | $ 636.49 |
| MUSIC, HAROLD | $ 2,629.62 | $ 83.70 | $ 2,545.92 |
| PALMER, RUDY | $ 2,629.62 | $ 83.70 | $ 2,545.92 |
| PROHNEY, TOM | $ 4,620.25 | $ 147.06 | $ 4,473.19 |
| QUILLEN, LEE | $ 1,314.81 | $ 41.85 | $ 1,272.96 |
| QUILLEN, SHERRIE | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| RAMSEY, CARL W. OR WILMA | $ 2,629.62 | $ 83.70 | $ 2,545.92 |
| REYNOLDS, MCARTHUR | $ 345.48 | $ 11.00 | $ 334.48 |
| RICHARDSON, DAVID | $ 1,972.22 | $ 62.77 | $ 1,909.45 |
| RICHARDSON, JERRY | $ 31,850.94 | $ 1,013.79 | $ 30,837.15 |
| RITCHIE, ALICE | $ 65.74 | $ 2.09 | $ 63.65 |
| ROBINETTE, RICK | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| SKEEN, BETTY | $ 2,828.16 | $ 90.02 | $ 2,738.14 |
| SLONE, HAROLD GENE | $ 8,974.00 | $ 285.64 | $ 8,688.36 |
| SLONE, LAUREN | $ 8,801.80 | $ 280.15 | $ 8,521.65 |
| SMITH, HOWARD | $ - | $ - | $ - |
| STARNES, ANTHONY | $ 32.87 | $ 1.05 | $ 31.82 |
| STARNES, VIRGINIA | $ 1,314.81 | $ 41.85 | $ 1,272.96 |
| SYKES, BEVERLY CUSTODIAN FOR BRADLEE | $ 1,679.91 | $ 53.47 | $ 1,626.44 |
| SYKES, BEVERLY CUSTODIAN FOR MICHELLE | $ 1,679.91 | $ 53.47 | $ 1,626.44 |
| SYKES, BEVERLY OR CARROL | $ 3,944.44 | $ 125.55 | $ 3,818.89 |
| SZANDERSKI, JOE | $ - | $ - | $ - |
| TEMPLETON, DENNIS | $ 49,306.58 | $ 1,569.39 | $ 47,737.19 |
| VANCE, THOMAS | $ 28,534.06 | $ 908.22 | $ 27,625.84 |
| WARD, ADRIANNA | $ | $ | $ |
| WARD, DEREK | $ | $ | $ |
| WARD, IRIS GAY | $ 2,564.54 | $ 81.63 | $ 2,482.91 |
| WARD, MARTY | $ - | $ - | $ - |
| WHITTEN, JOHN | $ 5,916.66 | $ 188.32 | $ 5,728.34 |
| WILLIAMS, DAVID | $ 3,501.14 | $ 111.44 | $ 3,389.70 |
| WILLIAMS, W. POWELL | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| WILLIAMS, WILFORD JR. | $ 5,947.96 | $ 189.32 | $ 5,758.64 |
| WILLIAMS, WILFORD JR. OR CAROLYN F. FOR CHRIS | $ 2,629.62 | $ 83.70 | $ 2,545.92 |
| WOLFE, JEFFREY | $ - | $ - | $ - |
| WOODS, LARRY | $ 23,045.74 | $ 733.53 | $ 22,312.21 |
| WOODS, PATRICIA | $ 6,574.06 | $ 209.25 | $ 6,364.81 |
| **TOTAL** | **$ 703,755.40** | **$ 22,400.00** | **$ 681,355.40** |