Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7061 | **DATE** | 9/13/2000 |
| **CASE TITLE** | Commodity Futures Trading Commision vs. FTI Financial Group., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter consent order of permanent injunction and other equitable relief against Randall Williams.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 1 4 2000 | 61 |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 00 SEP 13 PM 1: 07 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | 97 C 7061 |
| | ) | |
| FTI FINANCIAL GROUP, et al., | ) | Judge: |
| | ) | Harry D. Leinenweber |
| Defendants. | ) | |

**CONSENT ORDER OF PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF
AGAINST RANDALL WILLIAMS**

**DOCKETED**

**SEP 14 2000**

**I.**

1.      On October 9, 1997, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint against certain defendants seeking preliminary and other equitable relief for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. §§ 1 et seq. (1994). On January 28, 1998, the Commission filed an Amended Complaint, naming four additional defendants, including Randall Williams ("Williams").

2.      To effect settlement of the matters alleged in the Amended Complaint against Williams without a trial on the merits, Williams consents to the entry of this Consent Order of Permanent Injunction and Other Equitable Relief Against Randall Williams ("Consent Order"). Williams also: (1) acknowledges service of the Summons and Amended Complaint; (2) admits both personal and subject matter jurisdiction of this Court in this action; (3) admits that venue properly lies with this Court; and (4) generally waives the entry of findings of fact and conclusions of law in this action pursuant to Rule 52 of the Federal Rules of Civil Procedure, except as provided in Parts II and III below.



3.      By consenting to the entry of this Consent Order, Williams admits the allegations

of the Amended Complaint and the Findings of Fact and Conclusions of Law contained in this

Consent Order.  Williams further agrees and the parties to this Consent Order intend that all

Findings of Fact made by the Court in this Consent Order shall be taken as true and correct and

be given preclusive effect without further proof in any bankruptcy proceeding filed by, on behalf

of or against Williams for the purpose of determining whether the restitution and/or other

payments ordered against him are excepted from discharge.  Williams shall also provide

immediate notice of any bankruptcy proceeding filed by, on behalf of or against him in the

manner required by Section VI, paragraph 1 of this Consent Order.

4.      Williams waives:  (1) all claims that he may possess under the Equal Access to

Justice Act ("EAJA"), 5 U.S.C. § 504 (1994) and 28 U.S.C. § 2412 (1994), as amended by Pub.

L. No. 104-121, §§ 231-32, 110 Stat. 862-63, and Part 148 of the Commission's Regulations,

17 C.F.R. §§ 148.1, et seq. (1999), relating to or arising from this action and any right under

EAJA to seek costs, fees and other expenses relating to or arising from this proceeding; (2) any

claim of Double Jeopardy based upon the institution of this proceeding or the entry in this

proceeding of any order imposing a civil monetary penalty or any other relief; and (3) all rights

of appeal from this Consent Order.

5.      Williams also consents to the continued jurisdiction of the Court for the purpose

of enforcing the terms and conditions of this Consent Order and for any other purposes relevant

to this case.

6.      Williams agrees to cooperate fully with the Commission in its prosecution of the

Amended Complaint in this proceeding, in any ongoing investigations related to the subject

matter of the Amended Complaint, and in all other proceedings arising from such investigations

2

by, among other things: (1) responding promptly, completely, and truthfully to any inquiries or requests for information and otherwise cooperating fully with respect to discovery; (2) providing authentication of documents; (3) testifying completely and truthfully; and (4) not asserting privileges under the Fifth Amendment of the United States Constitution in connection with any testimony Williams is asked to provide.

7.     Williams further affirms that he has read this Consent Order and agrees to entry of this Consent Order voluntarily, and that no promise or threat of any kind has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce him to consent to this Consent Order, other than as set forth specifically herein.

8.     Williams acknowledges that, based upon the sworn representations contained in his Financial Disclosure Statement dated September 4, 1998, and other evidence provided by Williams regarding his financial condition, the Court is not ordering immediate payment of restitution, disgorgement or a civil monetary penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8. The determination not to order immediate payment of restitution, disgorgement or a civil monetary penalty is contingent upon the accuracy and completeness of the Financial Disclosure Statement and other evidence provided by Williams regarding his financial condition. If at any time following the entry of this Consent Order, the Commission obtains information indicating that Williams' representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, in its sole discretion and without prior notice to Williams, petition this Court for an order requiring Williams immediately to pay restitution, disgorgement and/or a civil monetary penalty.  In connection with any such petition, the only issues shall be

3

whether the financial information provided by Williams was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, and the additional amount to be imposed. In its petition, the Commission may request that this Court consider all available remedies, including, but not limited to, ordering Williams to pay funds or transfer assets, directing the forfeiture of any assets, imposing sanctions for contempt of this Consent Order and/or the Commission may also request additional discovery. Williams may not, by way of defense to such petition, challenge the validity of his consent to this Consent Order, contest the allegations in the Amended Complaint filed by the Commission or the Findings of Fact or Conclusions of Law contained in this Consent Order, contest the amount of restitution, disgorgement and/or interest, or assert that the payment of restitution, disgorgement and/or a civil penalty should not be ordered.

9.      The Court, being fully advised in the premises finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary equitable relief, pursuant to § 6c of the Act, 7 U.S.C. § 13a-1 (1994), as set forth herein.

## II.

### FINDINGS OF FACT

The Court hereby makes the following findings of fact:

1.      This Court has subject matter jurisdiction over this action and the allegations in the Amended Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (1994).

2.      This Court has personal jurisdiction over Williams and Williams has acknowledged service of the Summons and Amended Complaint and consented to the Court's jurisdiction over him.

4

3.     The Commission and Williams have agreed that this Court shall retain jurisdiction over each of them for the purpose of enforcing the terms of this Consent Order.

## THE PARTIES

4.     Plaintiff Commission is an independent federal regulatory agency charged with the responsibility of administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (1994), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1 et seq. (1999).

5.     Williams resides at 1321 Slater Street, Apt. 201, Toledo, Ohio 43612. Williams has been registered with the Commission as a commodity trading advisor since January 27, 1997.

## TRADER A'S MARKETING OPERATION

6.     Beginning in about November 1995, an individual who was engaged in trading commodity futures ("Trader A") and others, devised a business plan incorporating multi-level marketing techniques to solicit general partners and investors to form commodity pools. Trader A offered to trade the commodity pools that he advised pursuant to a commodity trading system called Profit 22.

7.     In or around January 1996, Trader A hired Williams to set up and operate Trader A's computer system. Williams prepared form documents, including offering memoranda, limited partnership agreements and subscription agreements to be used by the general partners of the pools that were formed. In addition, Williams created reports for the pool's general partners about Trader A's purported trading system and, eventually, for actual trading done by Trader A.

## WILLIAMS' SOLICITATIONS

8.     In or around May 1996, Williams solicited the partners of an Ohio partnership (the "Ohio Partnership") to form commodity pools to be traded by Trader A according to the

5

purported Profit 22 trading system.

9.      In or around July 1996, as a result of Williams' solicitation, the Ohio Partnership's partners formed three commodity pools. These pools included the CMS Partners I L.P., the CMS II Partners L.P., and the FTI pool. (Collectively, the three pools are referred to as the "Ohio Partnership pools" and the investors in these three pools are referred to collectively as the "Ohio Partnership Investors.")

10.     The Ohio Partnership's partners opened commodity trading accounts in the names of CMS I, CMS II and FTI at a futures commission merchant ("FCM"). Based upon Williams' representations, the Ohio Partnership's partners retained Trader A to trade their commodity pool accounts according to Trader A's trading system.

11.     In or around May 1996, Williams also solicited the Ohio Partnership's partners to raise funds to trade commodity interests through Secured Investment Agreements ("SIA"). The SIAs provided that investors' money would be placed in "non-securities related investments which offer a high return with minimum risk," that "all investments are secured at least one hundred per cent by assets . . . to be acquired with proceeds," and that "the specific funds will remain on deposit with Harris Trust and Savings Bank, Chicago, IL."

12.     As a result of Williams' solicitation efforts, the Ohio Partnership's partners solicited and accepted approximately $834,000.00 of investor funds for investment in SIAs, approximately $200,000.00 for investment in the CMS I pool and approximately $191,000.00 for investment in the CMS II pool. Altogether, the Ohio Partnership partners solicited and accepted a total of approximately $1,225,000.00.

13.     From on or about May 1996 to December 1996, Williams acted as an associated person of a commodity trading advisor ("CTA") without being registered with the Commission.

## WILLIAMS' TRADING OF POOL ACCOUNTS

14.     From on or about December 18, 1996, until at least March 1997, Williams

directed the trading in the Ohio Partnership pool accounts in exchange for an advisory fee.

However, Williams did not become registered with the Commission as a commodity trading

advisor until January 27, 1997.

15.     From on or about December 18, 1996 to January 27, 1997, Williams acted as a

CTA without being registered with the Commission.

## WILLIAMS' FRAUDULENT CONDUCT

16.     In connection with his solicitations, Williams misrepresented to the Ohio

Partnership's partners material facts relating to the risk and profit potential of investing in

commodity pools advised by Trader A and the past performance of Profit 22, including, among

other things:

a.      that Trader A had developed a highly successful commodity futures
        trading system called Profit 22;

b.      that Trader A traded the commodity pools he advised according to the
        Profit 22 system and had made substantial profits every month;

c.      that investors could expect a minimum return of 31% per year;

d.      that Trader A had made average annual returns of 200% to 300% trading
        the Profit 22 system;

e.      that Trader A had made 1200% in his best year trading the Profit 22
        system;

f.      that the investors' principal was virtually guaranteed; and

g.      that the Profit 22 system minimized the risks of commodity trading,
        because it signaled the purchase and sale of commodity interest contracts
        in 22 markets every day.

7

Williams intended that the Ohio Partnership's partners would repeat these misrepresentations to prospective investors.

17.     Williams prepared and sent false statements to the Ohio Partnership's partners which misrepresented material facts relating to the profitability of the pools' accounts by reporting only realized profits and losses, while failing to disclose unrealized losses on open positions in their accounts.

18.     Although the FCM reported the realized profits and losses and open trade equity to the Ohio Partnership's partners on daily profit and loss statements, Williams told the partners to disregard the statements sent by the FCM and to look only at the realized profits figures being reported on statements he sent them.

19.     In addition, Williams misrepresented material facts relating to Trader A's fee structure in that he told the Ohio Partnership's partners that no advisory fees would be charged to the pools if the pools had realized losses, but failed to disclose that Trader A's fee structure allowed Trader A to receive advisory fees while unrealized losses on open positions accumulated in their accounts.

20.     On at least four occasions in 1996, Williams prepared and sent false statements to the Ohio Partnership's partners that misrepresented material facts by substantially overstating the realized profits from Trader A's trading in billing the Ohio Partnership's pools for fees, thereby causing fees paid to Trader A and others to be higher than agreed.

21.     Williams represented to the Ohio Partnership's partners that the funds invested in the SIAs would be placed in investments that offered a high return with minimum risk, that the investments would be secured at least one hundred percent by assets, and that the funds would always remain on deposit with Harris Trust and Savings Bank.

8

## WILLIAMS' COMPENSATION

22.     Between in or about May 1996 and at least December 1997, Williams received at least $4,900.00 in advisory fees for trading the Ohio Partnership's pools. In addition, Williams received at least $1,490.00 in fees for soliciting the Ohio Partnership's partners.

23.     The acts and omissions described in these Findings of Fact were effected by use of the mails and other means or instrumentalities of interstate commerce, directly or indirectly.

24.     Williams committed the conduct, as set forth above, in or in connection with orders to make, or the making of, contracts of sale of commodities for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof.

25.     Williams made each and every fraudulent misrepresentation and omission either knowingly or with reckless disregarded for the truth and Williams willfully made each and every false report or statement.

26.     With respect to each and every Finding of Fact, the Ohio Partnership Investors reasonably, justifiably and detrimentally relied on Williams' acts, omissions, false reports and false statements.

### III.

### CONCLUSIONS OF LAW

Pursuant to the Findings of Fact, the Court makes the following Conclusions of Law:

1. From in or about May 1996 to at least December 1996, Williams violated Section 4b(a)(i) of the Act, 7 U.S.C. § 6b(a)(i), in that he cheated or defrauded or attempted to cheat or defraud other persons by making material misstatements of fact concerning the risk of trading commodity interests and the profitability and past performance of commodity interest trading accounts advised by Trader A. Williams' acts and omissions were made in or in connection with orders to make, or the making of, contracts for future delivery, made, or to be made, for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or by products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

2. From in or about May 1996 to at least December 1997, Williams violated Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii), in that he willfully made or caused to be made to other persons false reports or statements, by providing statements to the Ohio Partnership's partners and investors which falsely represented that profits had been made and overstated the true value of each investor's interest in commodity futures contracts. These false reports or statements were made in or in connection with orders to make, or the making of, contracts for future delivery, made, or to be made for or on behalf of other persons where such contracts for future delivery were or may have been used for (a) hedging any transaction in interstate commerce in such commodity, or the products or by products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof.

3.  From at least December 18, 1996 to January 27, 1997, Williams violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1), in that he engaged in the business of advising others as to the value or advisability of trading in commodity interests for compensation or profit without being registered with the Commission as a commodity trading advisor and made use of the mails or other means or instrumentality of interstate commerce in connection with this business.

4.  From in or about May 1996 to at least December 1996, Williams violated Section 4k(3) of the Act, 7 U.S.C. § 6k(3), in that he solicited clients' or prospective clients' discretionary accounts on behalf of Trader A, a commodity trading advisor, without being registered with the Commission as an associated person of a commodity trading advisor.

5.  From in or about May 1996 to at least December 1996, Williams violated Section 4o(1) of the Act, 7 U.S.C. § 6o(1), in that he employed a device, scheme, or artifice to defraud clients or participants or prospective clients or participants, or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon clients or participants or prospective clients or participants, while acting as an associated person of a commodity trading advisor. These acts and omissions were effected by use of the mails and other means or instrumentality of interstate commerce.

## IV.

## <u>ORDER FOR PERMANENT INJUNCTION</u>

NOW THEREFORE, IT IS ORDERED THAT:

1.      Williams is permanently restrained, enjoined and prohibited from directly or indirectly:

> a.      cheating or defrauding or attempting to cheat or defraud other persons, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be

11

made, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or byproducts thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof, in violation of Section 4b(a)(i) of the Act, 7 U.S.C. § 6b(a)(i);

b.   willfully making or causing to be made to such other person any false report or statement thereof, in violation of Section 4b(a)(ii) of the Act, 7 U.S.C. § 6b(a)(ii);

c.   acting as a commodity trading advisor without being registered under the Act and using the mails or any means or instrumentality of interstate commerce in connection with conducting business as a commodity trading advisor, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1);

d.   acting as an associated person of a commodity trading advisor without being registered under the Act, in violation of Section 4k(3) of the Act, 7 U.S.C. § 6k(3); and/or

e.   employing any device, scheme, or artifice to defraud any client or participant or prospective client or participant, or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or prospective participant, while acting as a commodity trading advisor or an associated person of a commodity trading advisor, by use of the mails or any means or instrumentality of interstate commerce in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o(1).

2.   Williams is further permanently restrained, enjoined and prohibited from directly or indirectly:

a.   soliciting, accepting or receiving any funds or other property from any person in connection with the purchase or sale of any commodity futures and options on futures ("commodity interest") contracts; placing orders, giving advice or price quotations or other information in connection with the purchase or sale of commodity interest contracts for himself or others; introducing customers to any other person engaged in the business of commodity interest trading; issuing statements or reports to others concerning commodity interest trading; and/or otherwise engaging in any business activities related to commodity interest trading;

12

b.     engaging in, controlling or directing the trading for any commodity interest transactions account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

c.     entering into any commodity futures or options transactions for his own account, for any account in which he has a direct or indirect interest and/or having any commodity interests traded on his behalf; and

d.     seeking registration or claiming exemption from registration with the Commission in any capacity under the Act; acting in any capacity for which registration or exemption from registration with the Commission is required under the Act; and/or acting as a principal, employee, officer or agent of any person registered, exempted from registration or required to be registered under the Act.

3.     The injunctive provisions of this Consent Order shall be binding upon Williams, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of Williams, and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Williams.

## V.

## ORDER FOR OTHER EQUITABLE RELIEF

IT IS FURTHER ORDERED THAT:

1.     <u>Restitution</u>:  Williams is ordered to pay restitution in the amount of $723,946.36 which includes disgorgement in the amount of $6,390.00 ("Disgorgement Amount").  Williams is also ordered to pay pre-judgement interest in the amount of $136.498.41 for total restitution in the amount of $860,444.77 ("Restitution Amount"), to be paid for the purpose of compensating persons whose funds were solicited, received or disposed of by Williams in violation of the statutory and other provisions identified in this Consent Order.

13

In addition, Williams shall pay post-judgment interest on the Restitution Amount from the date of this Consent Order until the Restitution Amount is paid in full. Pre-judgment interest shall be paid from May 1997 until the date of entry of this Consent Order at the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621. Post-judgment interest shall be paid at the Treasury Bill rate prevailing on the date of this Consent Order, pursuant to 28 U.S.C. § 1961(a).

Exhibit A, attached to the Consent Order of Permanent Injunction and other Equitable Relief against the FTI Defendants, entered by the Court on March 24, 2000, and incorporated herein by reference, is a listing of Ohio Partnership Investors. Exhibit A includes, *inter alia*, the Commission's calculation of the total amount of restitution owed each investor. The parties hereto acknowledge that the Exhibit A listing may be incomplete for various reasons including, without limitation, because records are missing or have been destroyed. Omission from Exhibit A shall in no way limit the ability of any Ohio Partnership Investor from seeking recovery from Williams or any other person or entity. Further, the amounts contained in Exhibit A shall not limit the ability of any Ohio Partnership Investor from proving that a greater amount is owed from Williams or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any Ohio Partnership Investor that exist under state or common law. The Commission is free to amend Exhibit A at any time to add additional or newly discovered investors and to change the amounts of pro rata distribution. Restitution shall be paid in accordance with the provisions of paragraph 2 below.

2. <u>Payment of Restitution</u>: Restitution shall be made as follows:

    a. Williams shall make an annual payment ("Annual Payment") to an account designated by a monitor determined by the Commission ("the Monitor") of: (1) a percentage of the adjusted gross income (as defined by

the Internal Revenue Code) earned or received by Williams during the previous calendar year, plus (2) all other cash receipts, cash entitlements or proceeds of non-cash assets received by Williams during the previous calendar year. The Annual Payment shall be made on or before September 30 of each calendar year, starting in calendar year 2000 and continuing for five years or until the Restitution Amount is paid in full, whichever occurs sooner.

b.  The National Futures Association shall be designated as the Monitor for a period beginning with the date of entry of this Consent Order and continuing until distribution of the last payment called for by this Consent Order or until the Restitution Amount is paid in full and distributed, whichever occurs first.

c.  Williams shall provide the Monitor with a sworn Financial Disclosure Statement and complete copies of his signed federal income tax returns, including all schedules and attachments thereto (e.g., IRS Forms W-2) and Forms 1099, as well as any filings he is required to submit to any state tax or revenue authority, on or before May 15 of each calendar year, or as soon thereafter as the same are filed, starting in calendar year 2000 and continuing for a period of five years or until the Restitution Amount is paid in full, whichever occurs first.

d.  Based on the information contained in Williams' tax returns, the Monitor shall calculate the Annual Payment to be paid by Williams for that year and the specific amounts payable to each of the Ohio Partnership Investors. On or before September 15 of each year and starting in calendar year 2000, the Monitor shall send written notice to Williams with instructions to pay the Annual Payment on or before September 30 to an account designated by the Monitor. The Monitor shall then disburse any payment by Williams to the Ohio Partnership Investors in the appropriate amounts, unless, in its sole discretion, based upon the amount of funds available for distribution, the Monitor decides to defer distribution. If at the end of the five year payment period, any of the Annual Payments has not been distributed or remains unclaimed, the Monitor shall either: (1) distribute the funds to the Ohio Partnership Investors; (2) make a recommendation to the Commission providing for distribution of the funds to any other individual whose funds were solicited, received or disposed of by any other defendant in this matter; or (3) make a recommendation to the Commission that the funds become a civil monetary payment pursuant to Section 6(c) of the Act. Any of the Annual Payments that become a civil monetary payment shall be paid to the Commodity Futures Trading Commission for deposit to the United States Treasury, and addressed to Dennese Posey, or her successor, Division of Trading and Markets, Commodity Futures Trading Commission, 1155 21st Street, N.W.,

Washington D.C. 20581, under cover of a letter that identifies Randall Williams and the name and docket number of this proceeding. A copy of the cover letter and the form of payment shall be simultaneously transmitted to Phyllis J. Cela, Acting Director, Division of Enforcement, Commodity Futures Trading Commission, or her successor, at the following address: 1155 21st Street, N.W., Washington D.C. 20581.

e.  The Annual Payments shall be calculated as follows:

| Where Adjusted Gross Income Plus Net Cash Receipts Total: | Percent of total to be paid by Williams to persons listed in Exhibit A is: |
|---|---|
| Under $50,000.00 | 0% |
| $50,000.00 up to and including $100,000.00 | 30% of the amount above $50,000.00 |
| Above $100,000.00 | $15,000.00 (which represents 30% of the amount between $50,00.00 and $100,000.00) plus 40% of the amount above $100,000.00. |

f.  Williams shall cooperate fully and expeditiously with the Monitor and the Commission in carrying out all duties with respect to his restitution. He shall cooperate fully with the Monitor and the Commission in explaining his financial income and earnings, status of assets, financial statements, asset transfers and tax returns, and shall provide any information concerning himself as may be required by the Commission and/or the Monitor. Furthermore, Williams shall provide such additional information and documents with respect thereto as may be requested by the Commission and/or the Monitor.

g.  Pursuant to Rule 71 of the Federal Rules of Civil Procedure, the Ohio Partnership Investors are explicitly made intended third party beneficiaries of this Consent Order and, after the date the last payment called for by this Consent Order is due, may enforce obedience of this Consent Order to obtain satisfaction of any portion of the Restitution Amount which has not been paid, to ensure continued compliance with any provision of this Consent Order and to hold Williams in default and/or contempt for any past violations of this Consent Order.

h.  Neither Williams, nor any member of his immediate family, is entitled to restitution in any amount for any funds invested in the Ohio Partnership pools.

16

3.    Collateral Agreements:  Williams shall immediately notify the Commission and

the Monitor if he makes or has previously made any agreement with any Ohio Partnership

Investor obligating him to make payments outside of the plan set forth in this Consent Order.

Williams shall also provide immediate evidence of any payments made pursuant to such

agreement in the manner required by Section VI, paragraph 1.

4.    Default:  Any failure by Williams to carry out any of the terms, conditions or

obligations under any paragraph of this Consent Order shall constitute an Event of Default under

this Consent Order.  If any Event of Default occurs and, if capable of being cured, is not cured

within ten (10) calendar days following the Commission's (or its designee) mailing of notice of

such Event of Default to Williams, the Commission (or its designee) and/or any Ohio Partnership

Investor shall be entitled to:

    a.    an order granting immediate payment of restitution in the amount of $723,946.36 plus pre-judgment interest of $136.498.41 less any payments made;

    b.    petition the Court to consider all available remedies including, but not limited to, imposing sanctions for contempt of this Consent Order;

    c.    enforce and take all legal steps necessary to satisfy the Permanent Injunction and otherwise declare the terms and conditions contained in this Consent Order null, void and without legal force;

    d.    pursue Williams for any and all additional claims and causes of action of any nature, in law or in equity, which the Commission or any Ohio Partnership Investor have, may have or may have had against Williams; and/or

    e.    use any statement heretofore or hereafter made by Williams as evidence against him.

Williams expressly agrees and this Court orders that upon the occurrence of an Event of Default,

Williams will be barred:  (1) from asserting any defense, including expiration of any statute of

17

limitations, waiver, estoppel or laches, where such defense is based on the alleged failure of the Commission or any Ohio Partnership Investor to pursue such claims or causes of action during the pendency of this civil action, during the negotiation of Williams' agreement to this Consent Order or while this Consent Order remains in effect; and/or (2) from objecting to, defending against or otherwise disputing the non-dischargeability of his obligations, including his obligations under this Consent Order.

5.     <u>Reliance on Financial Disclosure</u>:  Based upon the sworn representations of Williams contained in his Financial Disclosure Statement dated September 4, 1998, and other evidence provided by Williams regarding his financial condition, the Court is not ordering immediate payment of the Restitution Amount, the Disgorgement Amount or a civil monetary penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, and Rule 143.8 of the Commission's Regulations, 17 C.F.R. § 143.8.  The determination not to order immediate payment of the Restitution Amount, the Disgorgement Amount and/or a civil monetary penalty is contingent upon the accuracy and completeness of the Financial Disclosure Statement and other evidence provided by Williams regarding his financial condition.  If at any time following the entry of this Consent Order, the Commission obtains information indicating that Williams' representations to the Commission concerning his financial condition were fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made, the Commission may, in its sole discretion and without prior notice to Williams, petition this Court for an order requiring Williams immediately to pay the Restitution Amount, the Disgorgement Amount and/or a civil monetary penalty.  In connection with any such petition, the only issues shall be whether the financial information provided by Williams was fraudulent, misleading, inaccurate or incomplete in any material respect as of the time such representations were made,

18

and the additional amount to be imposed. In its petition, the Commission may request that this Court consider all available remedies, including, but not limited to, ordering Williams to pay funds or transfer assets, directing the forfeiture of any assets, imposing sanctions for contempt of this Consent Order and/or the Commission may also request additional discovery. Williams may not, by way of defense to such petition, challenge the validity of his consent to this Consent Order, contest the allegations in the Amended Complaint filed by the Commission or the Findings of Fact or Conclusions of Law contained in this Consent Order, contest the Restitution Amount, the Disgorgement Amount and/or interest, or assert that payment of the Restitution Amount, the Disgorgement Amount and/or a civil penalty should not be ordered.

      6.    <u>Transfer of Assets</u>:  Williams shall not transfer or cause others to transfer funds or other property to the custody, possession, or control of any members of his family or any other person for the purpose of concealing such funds from the Court, the Commission, the Monitor or any Ohio Partnership Investor, until the Restitution Amount has been paid in full.

**VI.**

**<u>MISCELLANEOUS PROVISIONS</u>**

      1.    <u>Notices</u>:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

      Regional Counsel
      Division of Enforcement - Central Region
      Commodity Futures Trading Commission
      South Riverside Plaza, Suite 1600N
      Chicago, Illinois 60606

Notice to Monitor:

      Vice President of Compliance

19

National Futures Association
200 West Madison Street
Chicago, Illinois 60606

Notice to Defendant:

Randall Williams
1321 Slater Street, Apt. 201
Toledo, Ohio 43612

In the event that Williams changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of his new number(s) and/or address(es) to the Monitor and to the Commission within ten (10) calendar days thereof.

2.      Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

3.      Waiver:  The failure of any party hereto or of any Ohio Partnership Investor at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

4.      Successors and Assigns:  This Consent Order shall inure to the benefit of and be binding upon the successors, assigns, heirs, beneficiaries and administrators of the parties hereto.

5.      Acknowledgements:  Upon being served with copies of this Consent Order after entry by the Court, Williams shall sign acknowledgments of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days.

Upon being served with copies of this Consent Order after entry by this Court, the Commission shall serve a copy of the Consent Order upon the Monitor and all persons identified in Exhibit A within seven (7) calendar days.

6.    Invalidation:  If any provision of this Consent Order, or the application of any provisions or circumstances is held invalid, the remainder of the Consent Order and the application of the provision to any other person or circumstance shall not be effected by the holding.

7.    Jurisdiction of this Court:  This Court shall retain jurisdiction of this cause to assure compliance with this Consent Order and for all other purposes related to this action.

DONE AND ORDERED, ADJUDGED AND DECREED this _12th_ day of
_Sept._____, 2000.

_____
The Honorable Harry D. Leinenweber
United States District Judge

*CONSENTED TO AND APPROVED BY:*

**PLAINTIFF**
COMMODITY FUTURES TRADING COMISSION by:

_____
Elizabeth E. Durbin
Trial Attorney


_____
Scott R. Williamson
Deputy Regional Counsel

COMMODITY FUTURES TRADING COMMISSION
300 S. Riverside Plaza, Suite 1600N
Chicago, Illinois 60606-6615
(312) 886-3090
(312) 353-4502 facsimile

DATED: _Aug. 31, 2000_

**DEFENDANT**
_____
Randall Williams
1321 Slater Street Apt. 201
Toledo, Ohio 43612
(419) 476-8616

DATED:_____

C:\My Documents\FTI\Order Perm Inj Williams Corrected Version #2 - 8.10.00 .doc

22